IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CHARLES B.,

    Plaintiff,

v.                                                                          CIVIL ACTION NO. 3:23-cv-00001

MARTIN J. O'MALLEY
Commissioner of Social Security,[1]

    Defendant.

## PROPOSED FINDINGS & RECOMMENDATION

Plaintiff Charles B. ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. By standing order entered on January 4, 2016, and filed in this case January 3, 2023, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 4). Presently pending before this Court are Claimant's Brief seeking judgment on the pleadings (ECF No. 12), and the Commissioner's Brief in Support of Defendant's Decision (ECF No. 15).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT**

---

[1] Commissioner O'Malley was substituted in place of Acting Commissioner Kilolo Kijakazi following O'Malley's appointment on December 20, 2023.

Claimant's request to reverse the Commissioner's decision, (ECF No. 12); **DENY** the Commissioner's request to affirm his decision, (ECF No. 15); **REVERSE** the final decision of the Commissioner; and **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

## I.  BACKGROUND

### A. *Information about Claimant and Procedural History of Claim*

Claimant was 52 years old at the time of his alleged disability onset date and 54 years old on the date of the decision by the Administrative Law Judge ("ALJ"). (Tr. 46).[2] He has a high school education and previously worked as a laborer. (Tr. at 190). Claimant alleges that he became disabled on January 15, 2020, due to an injury to his left wrist and hand, as well as diabetes. (Tr. 189).

Claimant protectively filed for SSI on January 22, 2020. (Tr. 37). His claim was initially denied on July 7, 2020, and again upon reconsideration on October 13, 2020. (*Id.*). Thereafter, Claimant filed a written request for a hearing. *See* (Tr. at 168). A telephonic administrative hearing was held by an ALJ on December 22, 2021. (Tr. 37). On February 9, 2022, the ALJ entered an unfavorable decision. (Tr. 34-51). The Appeals Council denied Claimant's request for review on November 8, 2022, and the ALJ's decision became the final decision of the Commissioner on that date. (Tr. 1-8).

Claimant timely brought the present action, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner filed a transcript of the administrative proceedings. (ECF No. 7). Claimant subsequently filed his Brief in Support of Complaint. (ECF No. 12). In response, the Commissioner filed his Brief in

---

[2] All references to "Tr." refer to the Transcript of Proceedings filed in this action at ECF No. 7.

Support of Defendant's Decision. (ECF No. 15). The time period within which Claimant could reply to the Commissioner's arguments expired. As such, this matter is fully briefed and ready for resolution.

### B. *Relevant Medical Evidence*

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and summarizes the relevant portions here for the convenience of the United States District Judge.

#### 1. *Treatment Records*

On January 15, 2020, Claimant presented to the emergency department after severely cutting his left wrist with a saw. (Tr. at 389, 391). Claimant stated that he was cutting firewood when the saw that he was using "grabbed a hold of his shirt kicking the blade" into the radial aspect of his left wrist. (Tr. at 389). He was diagnosed with an open left radial styloid fracture and laceration to the radial artery with possible flexor tendon and nerve involvement. (Tr. at 391, 392). Orthopedic surgeon Steven R. Novotny repaired the damaged radial artery, fracture, and affected tendons. (Tr. at 392). However, Dr. Novotny determined that the radial sensory nerve was severely damaged and nonvital. (Tr. at 394). Thus, he did not repair it at that point. (*Id.*).

On March 12, 2020, Claimant continued to complain of left wrist pain and difficulty making a full fist. (Tr. at 578). Dr. Novotny observed that Claimant's extensor pollicis longus (EPL) tendon did not appear to be functioning. (Tr. at 578). He prescribed physical therapy and medication, and he referred Claimant to pain management. (*Id.*). On April 9, 2020, Dr. Novotny again recorded that Claimant's EPL tendon was not functioning. (Tr. at 575). He further noted that Claimant demonstrated significant stiffness in his metacarpophalangeal (MP) joint. (*Id.*). Dr. Novotny identified that

Claimant was a candidate for tenolysis,[3] possible reconstruction of the EPL, and possible MP capsulectomies. (*Id.*). However, Dr. Novotny could not schedule his surgery due to the COVID-19 pandemic. (*Id.*). Claimant was instructed to continue working on his range of motion until he could receive surgery. (*Id.*). On May 8, 2020, during an occupational therapy visit, the therapist noted that Claimant's range of motion in his left fingers and wrist was improving. (Tr. at 275). He had continued tightness, but it was much improved since his previous visit. (*Id.*). Nonetheless, scar adhesions continued to limit Claimant's composite flexion. (*Id.*).

On June 15, 2020, Dr. Novotny performed a second surgery on Claimant. (Tr. at 569). Claimant suffered from significant disfunction of his left thumb following his initial surgery, EPL tendon rupture, multiple tendon adhesions, and hardware difficulty. (Tr. at 568-69). Dr. Novotny performed tendon transfer and repair and removed a plate and four screws and adhesions. (*Id.*). Later that month, Claimant was doing well with minimal pain, and he was participating in physical therapy. (Tr. at 567). During an unrelated emergency room visit on April 24, 2021, Claimant reportedly had intact sensation to his distal extremities, was moving his extremities without difficulty, and did not exhibit peripheral edema. (Tr. at 607). Also, during a primary care appointment for a COVID-19 test on July 31, 2021, Claimant exhibited normal musculoskeletal findings with no deformities or abnormalities. (Tr. at 734).

However, when Claimant returned to Dr. Novotny on November 3, 2021, he reported left upper extremity pain and numbness. (Tr. at 729). The numbness was present

---

[3] "Tenolysis is a surgical procedure to release or free a tendon from adhesions. Sometimes because of an injury or surgery, the tendons that bend and straighten the fingers become stuck in the scar tissue (adhesions) preventing the finger from moving properly."
https://www.uhcw.nhs.uk/download/clientfiles/files/Patient%20Information%20Leaflets/Trauma%20and%20Neuro%20services/Trauma%20and%20Orthopaedics/Tenolysis(1).pdf

4

all day, every day, for the past six months, although a wrist strap type glove provided some comfort. (*Id*.). Dr. Novotny ordered an EMG, provided Claimant a carpal and cubital tunnel brace, and prescribed a Medrol-Dosepak. (Tr. at 730). The nerve conduction studies of Claimant's left upper extremity taken on December 1, 2021 showed radial neuropathy at the level of his wrist injury. (Tr. at 738). There was no sensory nerve conduction response noted. (*Id*.). On January 4, 2022, Claimant presented to Dr. Novotny for follow up after undergoing surgery to treat radial sensory neuroma in his left forearm. (Tr. at 743). He had the same stiffness in his left wrist that he had before surgery. (*Id*.).

### 2. *Opinion Evidence*

On June 29, 2020, Saima Noon, M.D., assessed that Claimant could perform a range of sedentary work that included occasional climbing of ladders, ropes, or scaffolds; balancing; and stooping and frequent climbing of ramps or stairs, kneeling, crouching, or crawling. (Tr. at 87). Claimant could only occasionally push or pull and perform gross or fine manipulation with his left upper extremity due to his severe injury. (Tr. at 87-88). Claimant must also avoid concentrated exposure to extreme cold, vibration, and hazards. (Tr. at 88). Uma Reddy, M.D., found that Claimant could perform light exertional work with the same restrictions that Dr. Noon assessed, except Claimant could frequently stoop, occasionally crawl, tolerate less than moderate exposure to hazards, and could not tolerate concentrated exposure to extreme heat. (Tr. at 97-98).

### 3. *Hearing Testimony*

Claimant testified during the hearing before the ALJ on December 22, 2021. He stated that he was scheduled for surgery that day, explaining that he suffered from constant pain that felt like when "your hand falls asleep, and you have those needles going up and down your arm." (Tr. at 60). If he bumped his left hand against anything, he had

5

to stop what he was doing for 10 to 15 minutes for the pain to subside. (Tr. at 70). Claimant further testified that he was unable to open and close his left fist completely or hold onto anything with his left hand due to muscle atrophy. (Tr. at 61, 63). He had no feeling in most of his left hand, thumb, index finger, or middle finger. (Tr. at 65, 67)

### C. *Sequential Evaluation Process*

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985); *see Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step.

At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii),

416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a

claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*, 826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]." 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659. Considering the claimant's "pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria. 20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see id*. §§ 404.1520a(c), 416.920a(c). "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d), 416.920a(d). "If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." *Id.*

Applying the sequential evaluation process in this case, the ALJ concluded that Claimant had not engaged in substantial gainful activity since the alleged onset of his disability. (Tr. 39). The ALJ found that Claimant's chainsaw injury to his left hand and wrist, which caused extensor tendon damage to the EPL, EPB, ECRL, ECRB, and EIP of the left wrist and to the EDC of fingers two through five; a left open distal radius fracture; and severed nerves; and obesity constituted "severe" impairments. (*Id.*). However, he found that those impairments, or a combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 40). Upon assessing Claimant's RFC, the ALJ determined that Claimant could perform light exertional work as defined in 20 CFR 416.967(b) except he could lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours in an eight-hour workday and sit six or more hours in an eight-hour workday; occasionally climb ramps and stairs, but never able to climb ladders, ropes or scaffolds; occasionally

9

balance, stoop, kneel, crouch, and crawl; occasionally push and pull with the left upper extremity; was unable to lift or carry with the left upper extremity, but able to use it to assist in balancing loads borne by the right upper extremity; occasionally able to reach, handle, finger, and feel with the left upper extremity; and unable to tolerate exposure to concentrated hazards such as unprotected heights or moving machinery. (Tr. at 40-41).

The ALJ concluded that Claimant does not have any past relevant work. (Tr. 46). He noted that Claimant was "an individual closely approaching advanced age" on the date of his application, he had "at least a high school education," and that transferability of job skills is not material to the determination of disability because Claimant does not have any past relevant work. (Tr. at 46). Because the ALJ determined that Claimant is unable to perform the full range of light work, he enlisted a VE to aid in his finding that Claimant is capable of working as a furniture rental clerk, children's attendant, or public area attendant. (Tr. at 46-47). As a result, the ALJ concluded that Claimant was not under a disability during the relevant time period. (Tr. at 47).

## II. LEGAL STANDARD

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (alteration

omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id.* (quoting *Craig*, 76 F.3d at 589).

### III.  ANALYSIS

Claimant asserts that the ALJ erred by failing to (1) evaluate his claim at step three of the sequential evaluation under listing 1.21 and (2) account for the total limiting effects of his severe chainsaw injury to his left hand and wrist. (ECF No. 12 at 1). A claimant should be found disabled at step three of the sequential evaluation process when his or her impairments meet or medically equal an impairment included in the Listing in Appendix 1 of 20 C.F.R. Part 404, Subpart P. The Listing describes "for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." *See* 20 C.F.R. § 416.925. The Listing is intended to identify those individuals whose mental or physical impairments are so severe that they would be found disabled regardless of their vocational background; consequently, the criteria defining the listed impairments are set at a higher level of severity than that required to meet the statutory definition of disability. *Sullivan v. Zebley,* 493 U.S. 521, 532 (1990). Because the listed impairments presume disability, "[f]or a claimant to show that his impairment matches a [listed impairment], it must meet *all* of the specified medical criteria." *Id.* at 530. The claimant bears the burden of production and proof at this step of

11

the disability determination process. *Grant v. Schweiker,* 699 F.2d 189, 191 (4th Cir. 1983).

In the Fourth Circuit, "where there is factual support that a listing could be met," the ALJ must consider whether the claimant's impairment meets or equals the relevant listing. *Huntington v. Apfel*, 101 F. Supp. 2d 384, 390 (D. Md. 2000) (citing *Cook v. Heckler,* 783 F.2d 1168, 1172 (4th Cir. 1986)). "The ALJ's analysis must reflect a comparison of the symptoms, signs, and laboratory findings concerning the impairment, including any resulting functional limitations, with the corresponding criteria set forth in the relevant listing." *Id.* at 390-91; *see also Ezzell v. Berryhill*, 688 F. App'x. 199, 200 (4th Cir. 2017) ("When there is 'ample evidence in the record to support a determination' that the claimant's impairment meets or equals one of the listed impairments, the ALJ must identify 'the relevant listed impairments' and compare 'each of the listed criteria to the evidence of the claimant's symptoms.'") (citing *Cook*, 783 F.2d at 1172-73) (internal markings omitted).

As is the case throughout the sequential evaluation process, the ALJ must set forth the reasons for the step three determination. *See, e.g.*, *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling.") (citing *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984)). An ALJ's explanation is insufficient if it only states that the ALJ considered the listing of impairments and offers nothing to reveal *why* the ALJ made his or her determination. *Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015) ("Our circuit precedent makes clear that it is not our role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record."). Likewise, it is generally unacceptable for an ALJ to summarily

12

conclude that a claimant does not have an impairment or combination of impairments that meets a listing; the ALJ's decision must include a discussion that applies the pertinent legal requirements of the listing to the record evidence. *Radford*, 734 F.3d at 295. While an "ALJ is not required to explicitly identify and discuss every possible listing", the ALJ "is compelled to provide a coherent basis for [the] Step Three determination." *Ezzell*, 688 F. App'x at 200 (citation omitted).

In *Radford*, the Fourth Circuit found that an ALJ's step three analysis was "devoid of reasoning" and the ALJ's summary conclusion that the claimant did not meet a listing made it impossible for a reviewing court to evaluate whether substantial evidence supported the ALJ's findings. *Radford*, 734 F.3d at 295. The Fourth Circuit noted that a full explanation by the ALJ was particularly important in Radford's case because the medical record included a fair amount of evidence supportive of his claim; in fact, the record contained five years of medical examinations and probative evidence strongly suggesting that Radford met or equaled the relevant listing. *Id*. Similarly, in *Fox*, the Fourth Circuit found that the ALJ failed to explain the step three finding despite inconsistent evidence in the file, including a treating physician's numerous statements about the claimant's severe limitations, which possibly supported a finding that the claimant met the relevant listing. *Fox*, 632 F. App'x at 755 (4th Cir. 2015).

Despite the admonitions of the Fourth Circuit in *Radford* and *Fox* regarding an ALJ's duty of explanation at step three, "if the ALJ's opinion read as a whole provides substantial evidence to support the ALJ's decision at step three, such evidence may provide a basis for upholding the ALJ's determination." *McDaniel v. Colvin*, No. 2:14-CV-28157, 2016 WL 1271509, at *4 (S.D.W. Va. Mar. 31, 2016) (quoting *Smith v. Astrue*, 457 Fed. App'x. 326, 328 (4th Cir. 2011) ("Reading the ALJ's decision as a whole, substantial

13

evidence supports the finding at step three of the sequential evaluation process as the ALJ's analysis at subsequent steps of the evaluation are inconsistent with meeting [the listing].")). Indeed, "the ALJ need only review medical evidence once in his opinion." *Id.* at *4 (quoting *McCartney v. Apfel*, 28 Fed. App'x. 277, 279 (4th Cir. 2002)). Ultimately, "[a] cursory explanation in step three is satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." *Id.* (citing *Smith*, 457 Fed. App'x. at 328). Simply put, the written decision must demonstrate that the ALJ adequately performed all of the key tasks required by the sequential disability evaluation process. When the record includes conflicting evidence, or facts suggesting that the claimant might meet a listing, the ALJ's discussion is particularly important. Yet, "[i]f the court need not look beyond the ALJ's opinion to find substantial evidence supporting the ALJ's step-three determination, the ALJ's decision may be affirmed." *Marcum v. Berryhill*, No. CV 16-2297, 2017 WL 1095068, at *4 (S.D.W. Va. Mar. 23, 2017).

In this case, the ALJ considered Claimant's musculoskeletal impairments under listings 1.18 (abnormality of a major joint in an extremity) and 1.23 (non-healing or complex fracture of an upper extremity). (Tr. at 40). The ALJ cited the criteria required of the listings; stated, in conclusory fashion, that the objective medical evidence did not support a conclusion that Claimant's impairments are of listing-level severity; and cited a string of exhibits. (*Id.*). The ALJ's boilerplate statements do not provide any actual reasoning as to why Claimant does not satisfy those listings. The ALJ did not compare any of the evidence that he cited to the pertinent criteria or otherwise explain why Claimant's impairments are not "listing-level severity." However, despite these deficiencies, the

14

ALJ's analysis of listings 1.18 and 1.23 is not the issue before the Court. Thus, the undersigned addresses Claimant's specific challenge.

Claimant argues that the ALJ should have additionally considered listing 1.21, which provided the following at the time of the ALJ's decision:

> 1.21 Soft tissue injury or abnormality under continuing surgical management (see 1.00L), documented by A, B, and C:
> A. Evidence confirms continuing surgical management (see 1.00O1) directed toward saving, reconstructing, or replacing the affected part of the body.
> AND
> B. The surgical management has been, or is expected to be, ongoing for a continuous period of at least 12 months.
> AND
> C. Maximum benefit from therapy (see 1.00O2) has not yet been achieved.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.21 (Effective December 13, 2021, to May 3, 2022). Listing 1.21 is implicated "when an acceptable medical source(s) documents the need for ongoing surgical procedures and associated medical treatments to restore function of the affected body part(s)," which includes "the surgery(ies) itself, as well as various post-surgical procedures, surgical complications, infections or other medical complications, related illnesses, or related treatments that delay [the claimant's] attainment of maximum benefit from therapy." *Id*. § 1.00(L)(1)(a).

A claimant is no longer under "continuing surgical management" under listing 1.21 when "the last surgical procedure or medical treatment directed toward the re-establishment or improvement of function of the involved part has occurred." *Id*. § 1.00(O)(1). Further, a claimant has "received maximum benefit from therapy, as used in 1.21, if there are no significant changes in physical findings or on appropriate imaging for any 6–month period after the last surgical procedure or medical treatment." *Id*. §

15

1.00(O)(2). The SSA may also determine that a claimant has received maximum benefit from therapy if his or her "medical source(s) indicates that further improvement is not expected after the last surgical procedure or medical treatment." *Id.*

Claimant's attorney argued twice during the administrative hearing that Claimant satisfied listing 1.21 because he was under continuing surgical management to attempt to restore proper function of his left hand. (Tr. at 58-59); *see also* (Tr. at 80). Yet, despite counsel's insistence, the ALJ did not consider listing 1.21 in his decision. An ALJ is certainly not obligated to consider a listing simply because a claimant raises it, but an ALJ is required to consider listings that are potentially satisfied based on the record. It is apparent that the reason that Claimant's counsel emphasized listing 1.21 is because, as shown below, there was sufficient evidence in the record to warrant the ALJ considering it.

Claimant injured his left wrist and nearly severed his left hand with a chainsaw on January 15, 2020. (Tr. at 389, 391-92). Dr. Novotny performed surgery that day to repair the fracture, damaged tendons, and radial artery. (Tr. at 392). Claimant suffered from continued stiffness, pain, reduced range of motion, and functional problems following surgery. (Tr. at 275, 575, 578). Thus, Dr. Novotny performed a second surgery six months later, on June 15, 2020. (Tr. at 569). In his operative report, Dr. Novotny noted that Claimant's EPL tendon had ruptured, he had multiple tendon adhesions, and hardware difficulty. (Tr. at 568). Dr. Novotny removed the plate and screws that he had implanted, removed adhesions, and transferred and repaired the affected tendons. (*Id.*). Although there were some normal findings after surgery, Claimant reported significant numbness to Dr. Novotny on November 3, 2021. (Tr. at 729). Nerve conduction studies showed that Claimant had radial neuropathy at the level of his wrist injury with zero sensory nerve

conduction response. (Tr. at 738). On January 4, 2022, Claimant presented to Dr. Novotny for surgical follow up regarding "treatment of radial sensory neuroma in his left forearm." (Tr. at 743). He continued to suffer from stiffness in his left wrist. (*Id.*).

The Commissioner argues that Claimant's left hand impairment and associated limitations did not satisfy listing 1.21 because Claimant did not provide the operative note from his third surgery and the gap between his second surgery in June 2020 and the third surgery in late December 2021 or early January 2022 did not demonstrate that surgical management was ongoing for a "continuous period of at least 12 months." (ECF No. 15 at 10-11). However, the Commissioner provides nothing more than *post hoc* rationalization. The ALJ did not articulate any of the reasoning expressed by the Commissioner. The decision is devoid of any analysis of listing 1.21, which precludes meaningful review by the Court.

An ALJ must analyze a listing where there is factual support that it could be met. In this matter, there were enough facts suggesting that listing 1.21 might be satisfied to warrant discussion by the ALJ. Specifically, the chainsaw that sliced through Claimant's left wrist did not only fracture his bone and affect his joints, which could implicate listings 1.18 and 1.23, but it severely damaged soft tissues, including tendons and nerves, that required multiple surgeries to attempt to correct. He had complications from the initial surgery, including adhesions, a ruptured tendon, and hardware problems. Later, Claimant had surgery to treat radial sensory neuroma. The ALJ might have determined, in accordance with the Commissioner's reasoning, that the evidence did not satisfy listing 1.21 because Claimant did not provide the operative report or the gap between the surgeries were not indicative of continuous surgical management for 12 months.

However, the Court cannot speculate regarding the ALJ's reasoning. There was sufficient evidence that the listing could be met. Thus, the ALJ should have analyzed it.

Concerning the Commissioner's argument regarding the absence of the third operative note in the file, the SSA indeed specifies that is requires all of the following medically documented evidence about the continuing surgical management:

> a. Operative reports and related laboratory findings;
> b. Records of post-surgical procedures;
> c. Records of any surgical or medical complications (for example, related infections or systemic illnesses);
> d. Records of any prolonged post-operative recovery periods and related treatments (for example, surgeries and treatments for burns);
> e. An acceptable medical source's plans for additional surgeries; and
> f. Records detailing any other factors that have delayed, or that an acceptable medical source expects to delay, the saving, restoring, or replacing of the involved part for a continuous period of at least 12 months following the initiation of the surgical management.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00(L)(2) (Effective December 13, 2021, to May 3, 2022).

However, this case presents a unique circumstance in which, although the operative report itself is not in the file, Dr. Novotny's post-operative note dated January 4, 2022, clearly indicates that he performed surgery for Claimant's left radial sensory neuroma. (Tr. at 743). The preceding record from November 2, 2021 reflects that Claimant had persistent pain and numbness in his left upper extremity. (Tr. at 729). Testing on December 1, 2021 showed radial neuropathy *at the level of the injury to the wrist* without any sensory conduction response at all. (Tr. at 738). The Commissioner's argument is unavailing. It is abundantly clear from the record that Claimant had three surgeries on his left upper extremity on January 15, 2020; June 15, 2020, and sometime on December 22, 2021 or before January 4, 2022 related to a soft tissue injuries sustained

in his chainsaw accident. The ALJ might have concluded that listing 1.21 was not satisfied for various reasons, but it would be pure conjecture at this point for the Court to assume his reasoning. Therefore, the undersigned **FINDS** that the decision is not supported by substantial evidence and the Commissioner's decision should be reversed and the matter remanded to the ALJ to reconsider or elaborate upon the step three analysis of listing 1.21.

In light of the foregoing recommendation that this matter be remanded for further consideration of listing 1.21, the Court need not specifically address Claimant's second challenge as the ALJ will be able to reconsider and re-evaluate the evidence as part of the reconsideration of this claim. *Manning v. Kijakazi*, No. 621CV01845DCCKFM, 2022 WL 904094, at *8 (D.S.C. Feb. 24, 2022), *report and recommendation adopted sub nom. Manning v. Comm'r of Soc. Sec. Admin.*, No. 6:21-CV-01845-DCC, 2022 WL 903344 (D.S.C. Mar. 28, 2022) (quoting *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763–64 n.3 (W.D. Va. 2002) (on remand, the ALJ's prior decision has no preclusive effect as it is vacated and the new hearing is conducted *de novo*); *see Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). As such, on remand, the ALJ should also take into consideration Claimant's remaining allegation of error. *Id*.

### IV. CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Claimant's request to reverse the Commissioner's decision, (ECF No. 12); **DENY** the Commissioner's request to affirm his decision, (ECF No. 15); **REVERSE** the final decision of the Commissioner, and **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown. Copies of any objections shall be served on opposing parties and provided to Judge Chambers.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTER: February 29, 2024

Dwane L. Tinsley
United States Magistrate Judge